David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel.: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHEN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY RUBENSTEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FINANCIAL ENGINES, INC., BLAKE R. GROSSMAN, JOSEPH A. GRUNDFEST, E. OLENA BERG-LACY, HEIDI KUNZ, ROBERT A. HURET, MICHAEL E. MARTIN, LAWRENCE M. RAFFONE, JOHN B. SHOVEN, and DAVID B. YOFFIE<br><br>Defendants. | **Civil Action No.  5:18-cv-3542**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff Jerry Rubenstein ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public stockholders of Financial Engines, Inc. ("Financial Engines" or the "Company") against Financial Engines and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants," and, together with Financial Engines, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act

- 1 -
**CLASS ACTION COMPLAINT**

of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of Financial Engines by Edelman Financial, L.P. ("Edelman") through a transaction as alleged in detail herein

2. On April 29, 2018, Financial Engines, Edelman, and Flashdance Merger Sub, Inc., a Delaware corporation and an indirect wholly owned subsidiary of Edelman ("Merger Sub"), entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into Financial Engines, with Financial Engines continuing as the surviving corporation and as an indirect, wholly owned subsidiary of Edelman (the "Proposed Transaction").

3. Pursuant to the terms of the Merger Agreement, each outstanding share of Financial Engines common stock will be converted into the right to receive $45.00 per share in cash, without interest and subject to required withholding taxes ("Merger Consideration").

4. On June 8, 2018, in order to convince Financial Engines' stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Financial Engines; (ii) the valuation analyses performed by Financial Engines' financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler"), in support of its fairness opinion; and (iii) the background process leading up to the Proposed Transaction.

6. The special meeting of Financial Engines stockholders to vote on the Proposed Transaction is scheduled for July 16, 2018 (the "Stockholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

Plaintiff seeks to enjoin Defendants from holding the Stockholder Vote and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders sufficiently in advance of the Stockholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Financial Engines maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11. Plaintiff is, and at all relevant times has been, a stockholder of Financial Engines.

12. Defendant Financial Engines is a Delaware corporation and maintains its principal executive offices at 1050 Enterprise Way, 3rd Floor, Sunnyvale, California 94089. Financial Engines is a leading provider of independent, technology-enabled financial advisory services, discretionary portfolio management, personalized investment advice, financial and retirement income planning, and financial education and guidance. The Company's stock is traded on the

NASDAQ under the ticker symbol "FNGN".

13. Defendant Blake R. Grossman ("Grossman") is, and has been at all relevant times, a director of Financial Engines, and currently serves as the Chairman of the Board.

14. Defendant Joseph A. Grundfest ("Grundfest") is, and has been at all relevant times, a director of Financial Engines.

15. Defendant E. Olena Berg-Lacy ("Berg-Lacy") is, and has been at all relevant times, a director of Financial Engines.

16. Defendant Heidi Kunz ("Kunz") is, and has been at all relevant times, a director of Financial Engines.

17. Defendant Robert A. Huret ("Huret") is, and has been at all relevant times, a director of Financial Engines.

18. Defendant Michael E. Martin ("Martin") is, and has been at all relevant times, a director of Financial Engines.

19. Defendant Lawrence M. Raffone ("Raffone") is, and has been at all relevant times, a director of Financial Engines, and currently serves as the Chief Executive Officer ("CEO") and President of the Company.

20. Defendant John B. Shoven ("Shoven") is, and has been at all relevant times, a director of Financial Engines.

21. Defendant David B. Yoffie ("Yoffie") is, and has been at all relevant times, a director of Financial Engines.

22. The parties in paragraphs 13 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Financial Engines, the "Defendants."

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Financial Engines (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of June 1, 2018, there were 63,716,814 shares of Financial Engines common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Financial Engines will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

   i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

   ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought

herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.   Company Background and the Proposed Transaction**

25. Financial Engines is a leading provider of independent, technology-enabled financial advisory services, discretionary portfolio management, personalized investment advice, financial and retirement income planning, and financial education and guidance. The Company helps individuals, either online or with an advisor, develop a strategy to reach financial goals by offering a comprehensive set of services, including holistic, personalized plans for saving and investing, assessments of retirement income, and the option to meet face-to-face with a financial advisor at one of more than 140 advisor centers nationwide.

26. Financial Engines' advice and planning services cover employer-sponsored defined contribution (DC) accounts (401(k), 457, and 403(b) plans), IRA accounts, and taxable accounts. The Company uses its proprietary advice technology platform to provide our services to millions of individual investors, both DC plan participants in the workplace as well as retail investors, on a cost-efficient basis.

27. On April 30, 2018, Financial Engines issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **FINANCIAL ENGINES ANNOUNCES AGREEMENT TO
> BE ACQUIRED BY HELLMAN & FRIEDMAN
> FOR $45.00 PER SHARE IN CASH**
>
> **Transaction Would Combine Financial Engines and Edelman
> Financial Services,
> Creating Unparalleled Independent Registered Investment
> Advisor**
>
> SUNNYVALE, Calif.-- April 30, 2018-- Financial Engines (NASDAQ:FNGN), America's largest independent investment advisor[1], today announced that it has signed a definitive agreement to be acquired by funds affiliated with Hellman & Friedman ("H&F") in an all-cash transaction that values Financial Engines at an aggregate value of approximately $3.02 billion. Under the terms of the agreement, Financial Engines shareholders will receive $45.00 per share in cash upon the closing of the transaction. The

price per share represents more than a 32 percent premium above the closing share price of $33.95 on April 27, 2018 and more than a 41 percent premium above the trailing 90-day volume weighted average stock price for the period ended April 27, 2018. The agreement has been unanimously approved by Financial Engines' board of directors. Edelman Financial Services ("Edelman"), one of the nation's largest independent financial planning and investment management firms, will be combined with Financial Engines as part of the transaction. H&F owns a majority interest in Edelman.

Financial Engines and Edelman are two firms with similar proud legacies of providing investors independent financial advice. Founded in 1996, Financial Engines uniquely leverages proprietary technology and a network of advisors to deliver a broad range of financial planning and investment advice to investors through nationwide advisor centers and employees at their workplace. Today, with $169 billion in assets under management, more than 750 of America's leading employers and largest recordkeepers trust Financial Engines to help over ten million employees with more than $1 trillion in assets to save and invest for retirement. Over the past thirty years, Edelman has established itself as a leader in personal finance education and financial planning services. Edelman has become one of the largest independent financial planning firms in the nation, managing more than $21.7 billion for more than 35,000 clients across the country. The combined companies, with a shared vision, will create the leading provider of scalable, comprehensive, and unbiased advice for all investors.

"After a thorough assessment, the Board has determined that this transaction represents a compelling outcome for our stockholders, customers and employees. It recognizes the value of Financial Engines' franchise and mission while providing stockholders with a substantial premium," said Blake Grossman, Chairman of the Board of Financial Engines.

"Financial Engines is extremely excited to enter the next chapter of growth through a partnership with Hellman & Friedman," said Larry Raffone, President and CEO of Financial Engines. "We see tremendous alignment and commitment to our vision, and we believe the H&F partnership and the combination with Edelman is the best path for us to achieve our long-term strategic objectives, while providing significant and immediate upside to our stockholders, employees and clients." Larry will be President, CEO and board member of the combined company.

"Financial Engines is a pioneer in the high-growth financial technology sector. It brings a competitively superior investment methodology to its trusted relationships with the largest employers and recordkeepers in America," said Allen Thorpe, Partner at Hellman & Friedman. "We look forward to further investing in Financial Engines to accelerate its growth and success. We will work closely with Larry and the rest of the Financial Engines team and Ryan Parker and the Edelman team to bring these companies together into a unique business with an unparalleled mission to bring better financial help to millions of investors."

"Our unwavering focus on our clients has allowed us to build a rapidly growing business and we are proud of our long-time commitment to delivering high-quality financial planning and investment advice," said Edelman Founder and Chairman Ric Edelman. "We are very excited to join forces with Financial Engines to serve more clients better than ever and to accelerate growth in the business." Ric will be a board member and Chairman of Financial and Investor Education of the combined company.

The transaction, which is expected to close in the third quarter of 2018, is subject to approval by Financial Engines stockholders, regulatory approval and other customary closing conditions.

Sandler O'Neill & Partners, L.P. acted as financial advisor to Financial Engines, and Wachtell, Lipton, Rosen & Katz provided legal counsel. J.P. Morgan, Barclays, Deutsche Bank Securities Inc., and UBS Investment Bank acted as financial advisors to H&F and Simpson Thacher & Bartlett provided legal counsel to H&F and Edelman.

**About Financial Engines**
With roots in Silicon Valley, Financial Engines is the nation's largest independent investment advisor[1]. We believe that all Americans – not just the wealthy – should have access to high-quality, unbiased financial help and our client's best interests should always come first. Today, more than 750 of the nation's most respected employers trust Financial Engines to offer professional financial help to over ten million employees nationwide.

For more information, visit www.financialengines.com.

[1] For independence methodology and ranking, see InvestmentNews Center (http://data.investmentnews.com/ria/).

©1998-2018 Financial Engines, Inc. All rights reserved. Financial Engines® is a registered trademark of Financial Engines, Inc. All advisory services provided by Financial Engines Advisors L.L.C. Financial Engines does not guarantee future results.

**About Edelman Financial Services**
Edelman Financial Services is one of the nation's largest independent financial planning firms providing financial planning and investment management services to over 35,000 individuals and families, and managing more than $21.7 billion in assets. Edelman Financial Services has won more than 100 financial, business, community and philanthropic awards, and offers an investment philosophy that puts clients first and delivers value through in-depth financial education, personalized financial plans and access to experienced financial planners.

For more information, visit www.EdelmanFinancial.com.

**About Hellman & Friedman**
Hellman & Friedman is a leading private equity investment firm with offices in San Francisco, New York, and London. Since its

founding in 1984, Hellman & Friedman, through its affiliated funds, has raised and managed over $35 billion of committed capital. The firm focuses on investing in superior business franchises and serving as a value-added partner to management in select industries including financial services, software, business & information services, healthcare, internet & media, retail & consumer, and industrials and energy.

For more information on Hellman & Friedman, please visit www.hf.com.

28. In sum, the Proposed Transaction will deny Class Members their right to fully share equitably in the true value of the Company because the Merger Consideration appears to inadequately compensate Financial Engines stockholders.

29. It is therefore imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's stockholders can properly exercise their corporate suffrage rights and make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

## II.    The Materially Incomplete and Misleading Proxy

30. On June 8, 2018, Financial Engines filed the Proxy with the SEC in connection with the Proposed Transaction. The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Material Omissions Concerning Financial Engines' Financial Projections*

31. The Proxy provides two Non-GAAP (generally accepted accounting principles) financial metric for Financial Engines—Adjusted EBITDA and Cash Flow—but fails to provide a footnote and/or definition for each figure that details the specific metrics, adjustments, and/or inputs that are used to calculate each Non-GAAP financial measure. *See* Proxy at 37-38.

32. The failure to disclose the specific metrics, adjustments, and/or inputs that are used to calculate each Non-GAAP renders the Proxy materially incomplete and misleading because Non-GAAP numbers are inherently misleading. Specifically, in contrast to GAAP metrics, Non-GAAP figures are not standardized and, consequently, can be manipulated and easily taken out of context.

33. In fact, as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder. Too many investors focus on earnings before interest, taxes, depreciation, and amortization. That makes sense, only if you think capital expenditures are funded by the tooth fairy."[1]

34. With respect to Financial Engines' projections for Adjusted EBITDA, the Proxy fails to provide such inputs (*i.e.,* Financial Engines' projected taxes, depreciation, and amortization).

35. Furthermore, the only definition of Adjusted EBITDA provided in the Proxy defines Adjusted EBITDA as:

> [N]et income before net interest expense (income), income tax expense (benefit), depreciation, amortization of intangible assets, including internal use software, amortization and impairment of direct response advertising, amortization of deferred sales commissions, non-cash stock-based compensation expense, expenses related to the closing and integration of acquisitions, severance and benefits expenses related to restructuring activities and losses incurred on acquisitions, if applicable for the period.

*See* Proxy at 43.

36. However, the Proxy is unclear if this definition of Adjusted EBITDA also applies to Financial Engines' projections for Adjusted EBITDA on page 38. But if so, the Proxy also fails to disclose Financial Engines': (i) non-cash stock-based compensation expense; (ii) expenses related to the closing and integration of acquisitions; (iii) severance and benefits expenses related to restructuring activities; and (iv) losses incurred on acquisitions.

---

[1] Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.

37.     Numerous courts have championed the importance of management based financial projections because a company's management has unique insight into their firm's future that the market does not.  Stockholders cannot hope to replicate management's inside view of the Company's prospects.  The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making.

38.     The omission of the above information renders the financial projections included in the Proxy materially incomplete and misleading.  If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

***Material Omissions Concerning Sandler's Financial Analyses***

39.     With respect to Sandler's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analysis: (i) the inputs and assumptions underlying the selection of the compound annual growth rates ranging from 8.0% to 16.%; (ii) Financial Engines' estimated cash flow from operating activities for the year ending December 31, 2018; (iii) Financial Engines' estimated cash used in investing activities for the year ending December 31, 2018; and (iv) the inputs and assumptions underlying the calculation of the 13.1% discount rate.  *See* Proxy at 48.

40.     These key inputs are material to Financial Engine stockholders, and their omission renders the summary of Sandler's *Discounted Cash Flow Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

41.     With respect to Sandler's *Comparable Company Analysis*, the Proxy fails to disclose the individual multiples Sandler utilized for each of the companies included in the analyses. *See* Proxy at 44-46. A fair summary of the *Comparable Company Analysis* requires the disclosure of the individual multiples for each company utilized; providing the high, mean, median, and low multiples that a banker applied is insufficient, as stockholders are unable to assess whether the banker utilized the appropriate companies, or, instead, applied unreasonable companies in order to drive down the implied valuation of the Company. Accordingly, the omission of the individual multiples renders the summary of these analyses set forth on pages 44 through 46 of the Proxy materially incomplete and misleading.

42.     Similarly, with respect to Sandler's *Analysis of Precedent Merger Transactions*, the Proxy fails to disclose the individual multiples Sandler utilized for each of the transactions included in the analyses. *See* Proxy at 46-47. For the same reasons discussed above, the omission of why the individual multiples renders the summary of the analysis materially incomplete and misleading.

43.     Finally, with respect to Sandler's *Public Company Premiums Paid Analysis*, the Proxy fails to disclose the identities and individual multiples for the transactions that Sandler included in the analysis. *See* Proxy at 48. This is particularly troublesome in light of the fact that Sandler considered transactions "across all industries," and, in stark contrast to the other analyses in the fairness opinion, only disclosed the median and mean values that were calculated. The

absence of such information forces Company stockholders to blindly rely on the transactions considered referenced simply because Sandler found them satisfactory. Accordingly, the misleading information should be addressed by providing Financial Engines stockholders with the identities and individual values for each transaction considered so the stockholder can assess for themselves the credibility of the analysis.

44. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Stockholder Vote, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R . § 240.14a-9 Promulgated Thereunder)**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

47. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48. The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

49. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information concerning: (i) financial projections for Financial Engines; (ii) the valuation analyses performed by Financial Engines' financial advisor, Sandler, in support of its fairness opinion; and (iii) the background process leading up to the Proposed Transaction.

50. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make statements in the Proxy not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

51. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Sandler reviewed and discussed their financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Sandler as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for Financial Engines and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review the Sandler's analyses in connection

1  with their receipt of the fairness opinion, question Sandler as to the derivation of their fairness opinion, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Partnership's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

53. Financial Engines is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

54. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Stockholder Vote. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of Financial Engines within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Financial Engines, and participation in and/or awareness of the Financial Engines' operations and/or intimate knowledge of the incomplete and misleading

statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

59. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.  Enjoining Defendants and all persons acting in concert with them from proceeding with the Stockholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.  Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 13, 2018

Respectfully submitted,

*/s/ David E. Bower*
David E. Bower

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
         mschreiner@monteverdelaw.com

*Counsel for Plaintiff*

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT**